**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

ADRIANE HODGES,

*Plaintiff*,

v.

BELL COUNTY, TEXAS, and TINA ENTROP, in her official capacity as Bell County Auditor,

*Defendants*.

Case No. 6:26-cv-00734

**VERIFIED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. When candidates say what they plan to do if elected, it allows voters to know what they are choosing at the ballot box and to steer the ship of our democracy. That is a key reason the First Amendment "has its fullest and most urgent application precisely to the conduct of campaigns for political office." *McCutcheon v. FEC*, 572 U.S. 185, 191–92 (2014) (plurality opinion) (citation omitted). The Supreme Court has accordingly "never allowed the government to prohibit candidates from communicating relevant information to voters during an election." *Republican Party of Minn. v. White*, 536 U.S. 765, 782 (2002).

2. Yet the State of Texas maintains a statute that spurns this most basic aspect of our representative democracy, actively punishing candidates who espouse a particular viewpoint on the campaign trail. Through Texas Local Government Code § 152.052(a) (the "Political Speech Penalty"), Texas singles out candidates who

espouse a particular viewpoint—that the office for which they are running should be abolished—and requires them to accept no salary for the role if they manage to win. Imposing consequences for expressing a particular opinion is textbook viewpoint discrimination. And viewpoint discrimination is "presumptively unconstitutional" under the First Amendment. *Merriott v. City of Bossier City*, 179 F.4th 393, 410 (5th Cir. 2026) (citing *Rosenberger v. Rectors & Visitors of Univ. of Va.*, 515 U.S. 819, 829–31 (1995)).

3. The Political Speech Penalty also compels these elected officials to sign an affidavit stating they "elect" not to be paid, regardless of whether that is true. That is textbook compelled speech, and it is unconstitutional. Texas may not require this "involuntary affirmation," *West Va. St. Bd. of Educ. v. Barnette*, 319 U.S. 624, 633, 642 (1943), because "the right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977).

4. Defendant Bell County, Texas, is nevertheless enforcing this unconstitutional statute against Plaintiff Adriane Hodges, its Treasurer-elect. After Hodges ran and recently won on a platform of eventually abolishing the Treasurer's Office and rolling its duties into those of the County Auditor—a change 10 other Texas counties have already made—Bell County enforced the Political Speech Penalty against Hodges, preemptively setting her salary to zero in its 2027 budget. And, due to the Penalty, Hodges must submit an affidavit by January 6, 2027, attesting that she *wants* to work without pay, even though she does not.

5. The Political Speech Penalty and Bell County's enforcement of it against Hodges violate the First Amendment. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Barnette*, 319 U.S. at 642. But that is precisely what the Political Speech Penalty does: It singles out a specific policy position as unorthodox and imposes consequences on elected officials who support it.

6. Hodges did nothing more and nothing less than engage in our democratic process. She announced a campaign platform, persuaded voters to support her, and won on Election Day. That is exactly how representative democracy should work. Now, Texas is punishing Hodges for advocating the very policy she promised voters she would pursue. The First Amendment forbids Texas from penalizing Hodges for speaking her mind and winning an election.

## JURISDICTION AND VENUE

7. This action arises under the First and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

8. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the federal Constitution and laws of the United States.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Bell County is within the district.

10. Venue is also proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this district.

## THE PARTIES

***Plaintiff***

11. Plaintiff Adriane Hodges is a resident of Bell County, Texas. She is a Gold Star daughter, small-business owner, and mother of four. With her husband, Hodges co-owns and operates Bold Republic Brewing, a local brewery in Temple, Texas.

12. Hodges defeated an eight-year incumbent in the Republican primary for Bell County Treasurer on March 3, 2026. She campaigned on a promise to modernize and eventually abolish the Bell County Treasurer's Office, as have other counties in Texas. She ran unopposed in and won the general election on November 3, 2026. Hodges will take office as Bell County Treasurer on January 1, 2027, and intends to do all work the role requires during the pendency of her efforts to roll it into the Bell County Auditor's Office.

***Defendants***

13. Defendant Bell County, Texas, is a political subdivision in central Texas with a population of about 400,000.

14. The Bell County Commissioners Court is the principal governing body of Bell County. *See* TEX. CONST. art. V, § 18(b). It consists of a County Judge and four elected commissioners. *Id.*

15. The Bell County Commissioners Court amends and adopts county budgets, which are the official policy of Bell County. *See* TEX. LOC. GOV'T CODE §§ 111.039, 152.011. The Commissioners Court is the final policymaker for Bell County with respect to the county budget. *See Culbertson v. Lykos*, 790 F.3d 608, 621 (5th Cir. 2015).

16. An injunction against Bell County would bind the Bell County Commissioners Court and its members. *See* Fed. R. Civ. P. 65(d)(2)(A)–(B).

17. Defendant Tina Entrop is the Bell County Auditor. The five Bell County district judges appointed Entrop to this position in 2019 for a term of two years and have continuously reappointed her since then.

18. As County Auditor, Entrop is the "county payroll officer." TEX. LOC. GOV'T CODE § 152.051. Under the Political Speech Penalty's enforcement mechanisms, Entrop is responsible for receiving the required affidavit and withholding the elected officer's pay. *Id.* §§ 152.052(a), (c)–(d). She must also record each unpaid pay period and recover payroll taxes the county pays on withheld compensation. *Id.* §§ 152.053–054.

19. Hodges sues Entrop solely in her official capacity.

## FACTUAL ALLEGATIONS

***Texas Law Targets Candidates Supporting Office Abolition***

20. In 1989, the Texas Legislature enacted Local Government Code § 152.052(a) (the "Political Speech Penalty").

21. The Political Speech Penalty states: "Within five days after the date an elected county or precinct officer takes office, the officer shall file an affidavit with

the county payroll officer stating that the officer elects not to be paid for the officer's services if, during the person's campaign for election to the county or precinct office, the person publicly advocated the abolition of the office. The affidavit must include a statement by the officer describing the method by which the officer intends to seek to obtain the abolition of the office for which the officer was elected and the date by which it is proposed to be accomplished." *Id.* § 152.052(a).

22. Though the heading of the section containing the Political Speech Penalty reads "*Decision* to Reduce Compensation or Not to be Paid," the Political Speech Penalty is not optional. *Id.* § 152.052 (emphasis added). It requires that an officer who uttered the covered speech during a campaign "*shall* file" the affidavit *Id.* § 152.052(a) (emphasis added).

23. For purposes of the Political Speech Penalty and its enforcement, the "county payroll officer" is "the county auditor or other appropriate county officer who issues paychecks to county or precinct personnel." TEX. LOC. GOV'T CODE § 152.051.

24. In Bell County, the County Auditor is the county payroll officer.

25. Under the Political Speech Penalty, after the elected officer files the mandatory affidavit with the County Auditor "elect[ing]" not to be paid (*id.* § 152.052(a)), the County Auditor must withhold the officer's pay, *see id.* § 152.052(c), and "take measures to stop payment of a paycheck that was issued to the officer before the affidavit was filed and that has not been presented for payment," *id.* § 152.052(d).

26. The Political Speech Penalty applies only when an official expresses one specific view on the campaign trail—that the office for which she was running ought to be abolished.

***Hodges Campaigns on an Office-Abolition Platform***

27. On October 28, 2025, Hodges declared her candidacy for Bell County Treasurer.

28. Hodges campaigned on an unambiguous platform to eventually abolish the Bell County Treasurer's Office.

29. When announcing her candidacy, Hodges told the public: "I'm asking voters to hire me so I can fire myself." Mary Elise O'Bar, *Bell County Treasurer Candidate Promises to Eliminate Office, Following Galveston County*, THE TEXAN (Nov. 3, 2025), https://perma.cc/2JBX-RMBN.

30. Hodges believes the County Auditor could perform the responsibilities of the County Treasurer and that consolidating the offices would save taxpayer dollars.

31. Ten Texas counties have eliminated their County Treasurer's offices. From 1983 to 1988, Tarrant, Bee, Bexar, Collin, Andrews, El Paso, Nueces, Gregg, and Fayette counties eliminated their County Treasurer's offices. Most recently, Galveston County eliminated its County Treasurer's Office in 2024.

32. Hodges cannot eliminate the County Treasurer position in Bell County unilaterally. County Treasurer is a state constitutional position, so eliminating the position requires a statewide constitutional amendment. *See* TEX. CONST. art. XVI, § 44(a); *Moncrief v. Gurley*, 609 S.W.2d 863, 865 (Tex. Civ. App.—Fort Worth 1980),

(writ ref'd n.r.e.). For a constitutional amendment to become law, the Texas Legislature must first pass a joint resolution proposing the amendment. TEX. CONST. art. XVII, § 1(a). Then, a majority of statewide voters must approve the amendment during a statewide election cycle. *Id.*

33. This lengthy process has taken between ten months to nearly two years in other Texas counties.

34. For example, in Galveston County, approximately one year passed between the introduction of the proposed constitutional amendment in the Texas Legislature and its adoption that effectuated elimination of the office.

***Bell County Voters Elect Hodges on Her Office-Abolition Platform***

35. On November 2, 2025, two-term incumbent Bell County Treasurer Gaylon Evans announced his intent to run for re-election. Evans disagreed with Hodges' perspective on the Treasurer's Office, characterizing the office as "important" and "necessary." O'Bar, *supra* ¶ 29.

36. On March 3, 2026, Hodges defeated incumbent Evans in the Bell County Treasurer Republican primary, winning 52.5% of the vote.

37. On November 3, 2026, Hodges ran unopposed in and won the Bell County Treasurer general election, receiving 70,659 votes.

38. Hodges is now the County Treasurer-elect and will take office January 1, 2027.

39. The County Treasurer's duties include investing county funds at the direction of the Commissioners Court, disbursing county funds, and reporting

monthly on the county's receipts, disbursements, and obligations. TEX. LOC. GOV'T CODE §§ 116.112, 113.041, 114.026.

40. After she takes office, Hodges fully intends to perform all duties of the County Treasurer until a constitutional amendment eliminates the County Treasurer's Office.

41. For example, during her campaign, Hodges promised she would modernize the Office's payment system, accounting structure, and investment strategies.

42. In anticipation of this workload, Hodges has transferred most of her responsibilities at the brewery to staff members.

***After the Voters Elect Hodges, Bell County Enforces the Political Speech Penalty Against Her***

43. After Hodges won the Republican primary, the Bell County Commissioners Court began treating her as the presumed Treasurer-elect because she would be running unopposed in the general election.

44. On July 1, 2026, County Judge David Blackburn, a member of the Commissioners Court, sent an email to Hodges stating: "It has been brought to my attention that Section 152.52 [sic] of the Local Government Code [the Political Speech Penalty] will require you to file an affidavit within 5 days of taking office in January electing to not take a salary." Judge Blackburn informed Hodges: "This is due to your campaign for the abolition of the office."

45. Judge Blackburn acknowledged that Hodges had previously "indicated that [she] did intend to" "take a salary," but informed her the Political Speech Penalty

"will prevent that from happening" so "we will not be budgeting a salary for the Treasurer beginning January 1, 2027." He pasted the text of the Political Speech Penalty at the end of his email.

46. The next day, Hodges' friend and campaign manager Mack Latimer met with Judge Blackburn to share his and Hodges' concern that the Political Speech Penalty violates the First Amendment.

47. During their conversation, Judge Blackburn confirmed to Latimer that the County intended to enforce the Political Speech Penalty against Hodges.

48. Judge Blackburn sent Hodges another email on July 28, 2026, rejecting Hodges' First Amendment concerns with the Political Speech Penalty. In it, Blackburn insisted he and outside counsel believe the Political Speech Penalty "is constitutional and is the law."

49. In the July 28, 2026, email, Judge Blackburn said he wished to "advise" Hodges "of what direction [he] anticipate[s] the Commissioners Court is going to take relative to following" the Political Speech Penalty. He again told Hodges that "we anticipate you will … follow the law and file the affidavit within 5 days of taking office and we will not budget for the Treasurer's salary beginning January 1st."

50. In addition to stating that the officer "elects" not to be paid, this affidavit "must include a statement by the officer describing the method by which the officer intends to seek to obtain the abolition of the office for which the officer was elected and the date by which it is proposed to be accomplished." TEX. LOC. GOV'T CODE § 152.052(a).

51. The Political Speech Penalty does not require an officer who advocated for the expansion (or retention) of the office for which she ran to "include a statement by the officer describing the method by which the officer intends to seek to obtain" that result or "the date by which it is proposed to be accomplished." *Id.*

52. Only officers who run on an office-abolition platform must submit a sworn statement explaining how and when they will follow through on that campaign promise. An officer who runs on any other campaign promise need not submit a sworn (or other) statement explaining how and when they intend to follow through on that promise.

53. The Bell County Commissioners Court held an afternoon workshop and special meeting on July 29, 2026.

54. At the July 29 session, Hodges explained her belief that the Political Speech Penalty violates her First Amendment rights. She urged the Commissioners Court to adopt a budget that respects the constitutional rights of officeholders.

55. On August 25, 2026, the Bell County Commissioners Court approved the final budget for the 2026–2027 fiscal year, setting Hodges' salary at $0 pursuant to the Political Speech Penalty. The budget is attached as **Exhibit A.**

56. The Commissioners Court explicitly cited the Political Speech Penalty—Local Government Code § 152.052—in this 2026–2027 fiscal year budget. As shown in **Exhibit A**, at footnote 10 of Page 113, the budget states: "The salary for the County Treasurer will be $0 starting on 1/1/2027 in accordance with LGC 152.052."

57. According to **Exhibit A**, in fiscal year 2025–2026, the County paid the County Treasurer $114,928.

58. But for the Political Speech Penalty, Bell County would have budgeted a commensurate salary for the County Treasurer during Hodges' term, as it did for the County Treasurer in fiscal year 2025–2026 and all prior years.

59. Hodges does not elect to work for free nor file the required affidavit.

## INJURIES TO PLAINTIFF

60. Defendant Bell County, acting through the Bell County Commissioners Court, is violating Hodges' First Amendment rights by reducing her salary to $0 and compelling her to file an affidavit falsely stating she elects not to be paid and describing the method and date by which she intends to abolish her office. This affidavit is due on January 6, 2027.

61. Defendant Tina Entrop will violate Hodges' First Amendment rights when she withholds Hodges' pay after Hodges takes office on January 1, 2027. The Bell County Commissioners Court has already set Hodges' salary at $0. This injury will occur because the Political Speech Penalty discriminates against campaign speech that supports abolishing a particular office.

62. No member of the Bell County Commissioners Court or any other officer or employee of Bell County has disavowed the County's intent to enforce the Political Speech Penalty against Hodges.

63. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of*

*Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)).

64. In addition to these First Amendment harms, absent injunctive relief from this Court, Hodges will imminently suffer financial harm when Bell County Auditor Tina Entrop begins withholding her salary in January 2027.

**FIRST CLAIM**
**Facial Challenge to Texas Local Government Code § 152.052(a)—First Amendment**
**42 U.S.C. § 1983**
**(Against All Defendants)**

65. Hodges re-alleges and reincorporates the preceding paragraphs as though fully set forth herein.

66. The First Amendment, applicable to Defendants through the Fourteenth Amendment, prohibits the government from "abridging the freedom of speech[.]" U.S. CONST. amend. I.

67. The First Amendment's protection for speech, among other things, prohibits viewpoint discrimination, which occurs when the government regulates speech and "the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829.

68. "The government may not discriminate against speech based on the ideas or opinions it conveys." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019).

69. "Viewpoint discrimination is … an egregious form of content discrimination" because "[t]he government must abstain from regulating speech" based on the opinions expressed by the speaker. *Rosenberger*, 515 U.S. at 829.

70. The Supreme Court has "emphasized" that "the First Amendment has its fullest and most urgent application precisely to the conduct of campaigns for political office." *McCutcheon*, 572 U.S. at 191–92 (citation omitted).

71. The Political Speech Penalty violates the First Amendment on its face because it is viewpoint discriminatory. By its plain terms, the Political Speech Penalty applies to officials only "if, during the person's campaign for election to the county or precinct office, the person publicly advocated the abolition of the office." TEX. LOC. GOV'T CODE § 152.052(a).

72. An officer who expressed any other viewpoint may draw a full salary, need not file an affidavit falsely representing their views, and need not explain in writing how they will accomplish their campaign promises.

73. The First Amendment likewise forbids the government from compelling speech. It prohibits "public authorities" from "compel[ling]" a person "to utter what is not in his mind." *Barnette*, 319 U.S. at 634.

74. Laws that compel a person to affirm a message she does not believe are unconstitutional, as the government "may not compel affirmance of a belief with which the speaker disagrees." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 573 (1995). Compelling speech in that manner "offends the First Amendment." *303 Creative LLC v. Elenis*, 600 U.S. 570, 587 (2023).

75. Laws that compel speech are, if not simply unconstitutional, subject to strict scrutiny because "[m]andating speech that a speaker would not otherwise make

necessarily alters the content of the speech." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 795 (1988).

76. The Political Speech Penalty impermissibly compels speech. Hodges does not agree to work without pay. But the Political Speech Penalty requires her to swear in an affidavit that she "elects" to do exactly that. TEX. LOC. GOV'T CODE § 152.052(a).

77. Laws discriminating based on viewpoint are per se unconstitutional. *See Iancu*, 588 U.S. at 399 ("The Court's finding of viewpoint bias ended the matter.").

78. If any further test did apply to viewpoint-discriminatory laws, they would be subject to strict scrutiny.

79. The First Amendment also generally forbids government actions that discriminate based on the content of the speaker's expression. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citations omitted).

80. The Political Speech Penalty is content discriminatory because "on its face" it "draws distinctions based on the message a speaker convey[ed]." *Id.* (quotation omitted). If an officeholder's campaign speech discusses abolition of the office, the Penalty applies; otherwise, the Penalty does not apply.

81. The Political Speech Penalty is also content discriminatory because speech compulsions are necessarily content-based as they require the speaker to parrot a specific message.

82. To survive strict scrutiny, a law must be narrowly tailored to achieve a compelling government interest and must be the least restrictive means of achieving that interest. *United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000).

83. The Political Speech Penalty is not narrowly tailored to achieve a compelling government interest.

84. Texas has no legitimate, much less compelling, interest in penalizing candidates for advocating a particular viewpoint during a campaign. The Supreme Court has consistently rejected attempts by the government to regulate and punish campaign speech based on the viewpoint expressed. *See, e.g.*, *Brown v. Hartlage*, 456 U.S. 45 (1982); *Bond v. Floyd*, 385 U.S. 116 (1966); *Communist Party of Ind. v. Whitcomb*, 414 U.S. 441 (1974).

85. Texas has a content-neutral method of ensuring that county officials perform their duties: The Texas Constitution permits the removal of county officers for "incompetency" or "official misconduct," among other things, without considering the officer's campaign speech. TEX. CONST. art. 5, § 24.

86. Nor is the Political Speech Penalty the least restrictive means of advancing Texas' objectives because an officer who genuinely wishes to forgo her salary may choose to do so, *see* TEX. LOC. GOV'T CODE § 152.052(b), voters who disagree with a candidate's platform or performance in office may vote against her,

and officers who fail to perform their duties may be removed from office, *see supra* ¶ 85.

87. The foregoing strict scrutiny analysis of the Political Speech Penalty that requires finding it unconstitutional on its face also satisfies the Fifth Circuit's interpretation that *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), requires "two steps" for a "proper First Amendment facial challenge"—first, determining "every hypothetical application of the challenged law," and second, deciding "which of the law['s] applications violate the First Amendment, and [measuring] them against the rest." *NetChoice, LLC v. Paxton*, 121 F.4th 494, 498 (5th Cir. 2024) (quotations omitted).

88. The Political Speech Penalty clearly names who and what it targets: any person who "during the person's campaign for election … publicly advocated the abolition of the office." TEX. LOC. GOV'T CODE § 152.052(a). *Cf. NetChoice*, 121 F.4th at 498–99.

89. At minimum, "the law's unconstitutional applications substantially outweigh its constitutional ones." *Moody*, 603 U.S. at 724. The Political Speech Penalty applies only when a candidate voices a specific "opinion or perspective"—supporting the abolition of a particular office. *Rosenberger*, 515 U.S. at 829. Thus, every application of the Political Speech Penalty is necessarily viewpoint discriminatory, compels speech, and fails strict scrutiny.

90. Hodges has no adequate remedy at law for the deprivation of her First Amendment rights caused by the Political Speech Penalty because no award of money

damages can restore the harm caused by the government compelling Hodges to "utter what is not in [her] mind," *Barnette*, 319 U.S. at 634, nor can an award of money damages cure Hodges' penalization for protected campaign speech, *see Elrod*, 427 U.S. at 373.

91. The balance of equities and public interest favor an injunction. Defendants have no legitimate interest in enforcing a viewpoint-discriminatory law and compelling speech, and the public has a strong interest in knowing that the government has not penalized or discouraged viewpoints during campaigns.

92. An actual and justiciable controversy exists between Hodges and Defendants over whether Defendants may enforce the Political Speech Penalty against her, and a declaratory judgment under 28 U.S.C. § 2201 will resolve it.

93. Hodges is therefore entitled to a declaration that the Political Speech Penalty violates the First Amendment, an injunction barring Defendants from enforcing it against her, and reasonable attorneys' fees under 42 U.S.C. § 1988.

**SECOND CLAIM**
**As-Applied Challenge to the Political Speech Penalty—First Amendment**
**42 U.S.C. § 1983**
**(Against All Defendants)**

94. Hodges re-alleges and reincorporates the preceding paragraphs as though fully set forth herein.

95. Even if the Political Speech Penalty had constitutional applications (it does not), it is unconstitutional as applied to Hodges.

96. During her campaign, Hodges publicly advocated abolishing the Bell County Treasurer's Office as an exercise of core, protected political campaign speech. *See McCutcheon*, 572 U.S. at 191–92 (plurality op.).

97. Bell County, acting through the Commissioners Court, its final policymaker for budgets, has enforced the Political Speech Penalty against Hodges by setting the County Treasurer's salary at $0 for her term "in accordance with LGC 152.052." **Exhibit A**.

98. As applied to Hodges, the Political Speech Penalty penalizes her solely because of the viewpoint she expressed during her campaign.

99. The Political Speech Penalty also compels Hodges to falsely swear that she "elects" not to be paid. TEX. LOC. GOV'T CODE § 152.052(a).

100. For the reasons set out above, the Political Speech Penalty is unconstitutional and cannot survive strict scrutiny as applied to Hodges.

101. Hodges is entitled to a declaration that the Political Speech Penalty is unconstitutional as applied to her, and to preliminary and permanent injunctive relief barring Defendants from enforcing it against her, for the reasons stated in Claim I.

102. In addition to declaratory and injunctive relief, Hodges is entitled to nominal damages against Bell County. The Commissioners Court violated Hodges' First Amendment rights when it adopted the $0 County Treasurer salary on August 25, 2026, because Bell County would not have set Hodges' salary at $0 had she not campaigned in favor of abolishing the Bell County Treasurer's Office. A "completed

violation of a legal right" can support a claim for nominal damages. *Uzuegbunam v. Preczewski*, 592 U.S. 279, 292 (2021).

103. Hodges is entitled to reasonable attorneys' fees under 42 U.S.C. § 1988.

## JURY DEMAND

Under Fed. R. Civ. P. 38, Plaintiff demands a jury trial on all issues triable to a jury.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court enter judgment against Defendants and issue the following relief:

A. Declare that Texas Local Government Code § 152.052(a) is facially unconstitutional because it discriminates based on viewpoint and content in violation of the First Amendment;

B. Declare that Texas Local Government Code § 152.052(a) is unconstitutional as applied to Hodges because it discriminates based on viewpoint and content in violation of the First Amendment;

C. Declare that Texas Local Government Code § 152.052(a) is facially unconstitutional because it compels speech in violation of the First Amendment;

D. Declare that Texas Local Government Code § 152.052(a) is unconstitutional as applied to Hodges because it compels her speech in violation of the First Amendment;

E. Issue a preliminary injunction enjoining Defendants from enforcing Texas Local Government Code § 152.052(a) against Hodges;

F. Issue a permanent injunction enjoining Defendants from enforcing Texas Local Government Code § 152.052(a) against Hodges;

G. Award Plaintiff nominal damages against Defendant Bell County;

H. Award Plaintiff her attorneys' fees under 42 U.S.C. § 1988 and any other applicable law;

I. Award Plaintiff her costs;

J. Award such other relief as the Court deems appropriate.

Dated: November 19, 2026

Respectfully Submitted,

/s/ *JT Morris*

Conor T. Fitzpatrick*
Mich. Bar No. P78981
JT Morris
Tex. Bar No. 24094444
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
700 Pennsylvania Ave. SE, Ste. 340
Washington, DC 20003
(215) 717-3473
conor.fitzpatrick@fire.org
jt.morris@fire.org

Heather A. Pincus*
N.Y. Bar No. 6324255
Sumaya Siddiqui*
Tex. Bar No. 24157472
FOUNDATION FOR INDIVIDUAL RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
heather.pincus@fire.org
sumaya.siddiqui@fire.org

*Pro hac vice motion forthcoming

*Counsel for Plaintiff*

## VERIFICATION OF ADRIANE HODGES

Under 28 U.S.C. § 1746, I, Adriane Hodges, declare as follows:

1. I am the Plaintiff in the present case.

1. I have read the foregoing Verified Complaint.

2. I have personal knowledge of the factual allegations in paragraphs 4, 11–12, 27–49, 53–57, 59–62, 64, 76, 96–97, and 99 of the Verified Complaint and know them to be true.

3. I verify under penalty of perjury that the foregoing is true and correct.

Executed on November 18, 2026.

Adriane Hodges